# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

BILLY S. CAMPBELL,

                    Petitioner,              :       Case No. 1:16-cv-631

        - vs -                                       District Judge William O. Bertelsman
                                                     Magistrate Judge Michael R. Merz

TERRY A. TIBBALS, Warden,
    London Correctional Institution,

                                             :
                    Respondent.

---

## REPORT AND RECOMMENDATIONS

---

This habeas corpus case, brought by Petitioner Campbell pro se under 28 U.S.C. § 2254, is before the Court for decision on the merits. Having reviewed the Petition (ECF No. 1), Magistrate Judge Bowman ordered the Warden to Answer (Order for Answer, ECF No. 3). The Warden filed both the state court record ("SCR," ECF No. 7) and a Return of Writ (ECF No. 8) Petitioner filed his Traverse & Reply December 22, 2016 (ECF No. 12). To help spread the Magistrate Judge workload in the Western Division, Judge Bowman transferred the case to the undersigned (ECF No. 13).

**Procedural History**

The Butler County grand jury indicted Campbell for trafficking in heroin and possession of heroin, both with a major drug offender specification. Campbell moved to suppress his

statements to the police and the seized heroin.  After the trial court denied the motion, Campbell

pleaded no contest.  The trial court found him guilty, merged the two offenses, and sentenced

him to eleven years imprisonment.  Campbell appealed to the Ohio Twelfth District Court of

Appeals which affirmed the conviction. *State v. Campbell*, 2014 WL 6725967 (12th Dist. Dec. 1,

2014), appellate jurisdiction declined, 143 Ohio St. 3d 1404 (2015); cert. den., *Campbell v. Ohio*,

136 S. Ct. 902 (2016).  Campbell then timely filed the instant habeas Petition, pleading the

following grounds for relief:

> **Ground One:**  The State violated Petitioner's rights under the
> Fifth Amendment to the United States Constitution when it failed
> to read him his Miranda rights prior to his interrogation.
>
> **Supporting Facts:**  The police may have read the Petitioner his
> Miranda rights during the initial traffic stop but he made no
> statements at that time. Later, he was arrested, transported to the
> police department, and after a substantial delay he was interrogated
> a second time without having been read his Miranda rights. The
> police officer whom the State claims Mirandized him did not
> testify at the suppression hearing, there was no written waiver of
> rights, and the videotape of the interrogation conveniently
> malfunctioned at the point in time when the State claims the
> Miranda warning would have been read. The state courts placed
> the burden on the Petitioner to prove that the rights were not read
> instead of placing the burden on the State to prove that they had
> been read to the Petitioner after the substantial delay.
>
> **Ground Two:**  The State violated Petitioner's 4th and 14th
> Amendment rights when Ohio police tracked him through a cell
> phone without a valid search warrant using GPS technology while
> he was in Massachusetts,
>
> **Supporting Facts:**  Ohio police found a Massachusetts phone
> number at Petitioner's home and used cell phone pings to track
> him to a private residence in Massachusetts. Police continued to
> track him as he traveled cross country without a valid search
> warrant. The warrant the police received from a state court in Ohio
> had no authority outside of Ohio and it constituted an unlawful
> search and seizure outside of law enforcement's jurisdiction.
> Petitioner was not given an opportunity for full and fair litigation

of these claims in state court because the state court prohibited him from presenting them on the grounds of standing and it applied an ex post facto version of Rule 41 of the Ohio Rule of Criminal Procedure to justify the result in violation of Article I, Section 9 of the U.S. Constitution.

**Ground Three:** The pinging of the cell phone violated the Petitioner's Fourth Amendment rights in violation of the U.S. Constitution.

**Supporting Facts:** The State of Ohio avoided addressing Petitioner's Fourth Amendment claims in state court by claiming that since the cell phone was billed to Petitioner's spouse, Petitioner lacked standing to challenge the State's search. However the State lacked any probable cause to track the spouse and did so only to track Petitioner. The State may not circumvent the Fourth Amendment by disingenuously claiming that it was tracking a suspect's spouse and not the suspect. Petitioner was not given an opportunity for full and fair litigation of these claims in state court because the state court prohibited him from presenting them on the grounds of standing.

**Ground Four:** The state court unreasonably failed to apply well-established U.S. Supreme Court precedent when it upheld the State's traffic stop of the Petitioner without probable cause in violation of the Fourth Amendment to the U.S. Constitution.

**Supporting Facts:** The police officers in this case physically followed Petitioner's vehicle from Ashland, Ohio to Butler County Ohio looking for a traffic violation that would constitute probable cause to stop the vehicle. Finding none they stopped the vehicle anyway before the Petitioner could reach his home. The lack of probable cause to stop the vehicle violated Petitioner's Fourth Amendment rights. The state court unreasonably failed to apply well established U.S. Supreme Court precedent in deciding this issue.

(Petition, ECF No. 1, PageID 5-9.)

# Analysis

**Ground One:  Introduction of Involuntary Admissions**

In his First Ground for Relief, Mr. Campbell asserts his privilege against self-incrimination protected by the Fifth Amendment was violated when the state courts failed to suppress statements he made to the police without validly waiving his Fifth Amendment rights. The Warden concedes this ground for relief is preserved for merits review in this Court.

The First District Court of Appeals considered this claim on direct appeal.  That court found as relevant background facts the following:

> {¶ 2} The Butler County Undercover Regional Narcotics Unit (BURN) received a tip from a confidential informant that Campbell was transporting heroin from the East Coast to Ohio. The informant gave BURN agents Campbell's name and address, along with information that several heroin overdoses in the area could be attributed to the heroin Campbell was selling. Agents also learned that Campbell would rent a car, and take his family with him on the trip to the East Coast to retrieve the heroin, usually in and around the Boston, Massachusetts area. Campbell's family included his wife and two children, ages 14 and six. BURN agents received similar information from other trusted informants and cooperating defendants, including that Campbell was soon to go to Boston for a large heroin purchase and would be bringing the heroin back to Ohio.
>
> {¶ 3} BURN agents began an investigation, which included surveillance on Campbell's home. Agents learned from other confidential informants that Campbell was about to take a trip to Boston to purchase heroin, and through surveillance, confirmed that a rental car was located at Campbell's home. Campbell, along with his wife and two children, then left for Boston in the rental car.

{¶ 4} Once the car had departed, agents continued their investigation and performed a trash-pull at Campbell's residence. During the trash-pull, agents located a paper that listed various phone numbers. Agents received a warrant related to Campbell's cellular phone, allowing them to "ping" the cell phone in order to determine Campbell's physical location. However, when the number associated with Campbell was found to be invalid, agents received a warrant associated with another phone number that was listed on the paper found during the trash-pull, which subsequently was discovered to belong to Campbell's wife. Agents "pinged" the phone belonging to Campbell's wife, and determined that the phone was located in Massachusetts. Agents later traced the pings from Massachusetts to Ohio as the Campbells traveled back toward Butler County.

{¶ 5} Agents shared information learned from the investigation with the Butler County Sheriff's Office regarding the confidential informants' tips and surveillance of Campbell's residence. Butler County officers then became involved in the investigation and offered assistance in performing an investigatory stop when Campbell returned from Boston to the Butler County area.

{¶ 6} After following the Campbells' rental car, BURN agents instructed an officer to pull over Campbell's car for an investigatory stop. An officer pulled the car over, and within a few minutes, a canine officer arrived on the scene and walked his canine partner around Campbell's car. The canine alerted to the presence of drugs, and officers found marijuana in the driver's-side door as well as heroin in a suitcase located in the rental car's trunk. Campbell was immediately given his *Miranda* warnings as he stood on the side of the road. Campbell was then taken to the police station, where he spoke with one of the agents after being re-advised of his *Miranda* rights.

*State v. Campbell*, *supra*.

The Twelfth District then considered and decided Campbell's Third Assignment of Error

as follows:

{¶ 33} Assignment of Error No. 3:

{¶ 34} THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS EVIDENCE BY UPHOLDING THE NUMEROUS VIOLATIONS OF THE APPELLANT'S MIRANDA RIGHTS, AND THEREBY

5

VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL, RIGHT TO DUE PROCESS OF LAW, AND RIGHT TO REMAIN SILENT, AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION.

{¶ 35} Campbell argues in his third assignment of error that the trial court erred in denying his motion to suppress because his Fifth Amendment right against self-incrimination was violated.

{¶ 36} It is well-established that before law enforcement officials interrogate a suspect in custody, the suspect must be advised of his *Miranda* rights and make a knowing and intelligent waiver of those rights before any statements obtained during the interrogation will be admissible as evidence. *State v. Hernandez–Martinez,* 12th Dist. Butler No. CA2011–04–068, 2012–Ohio–3754. If a defendant later challenges a confession as involuntary, the state must prove a knowing, intelligent, and voluntary waiver by a preponderance of evidence. *State v. Vunda,* 12th Dist. Butler Nos. CA2012–07–130, CA2013–07–113, 2014–Ohio–3449. To determine whether a valid waiver occurred, we "consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *Id.* at ¶ 15, quoting *State v. Edwards,* 49 Ohio St.2d 31 (1976), paragraph two of the syllabus.

{¶ 37} During the motion to suppress hearing, a BURN agent testified that he gave Campbell *Miranda* warnings by reading the warnings from a card listing the warnings, as provided by the Drug Enforcement Agency. The agent testified that he issued the warnings once Campbell got out of the car during the investigatory stop and once agents located the marijuana and heroin in the car. The issuance of *Miranda* warnings was witnessed by another agent on the scene, and that agent also testified that Campbell received his *Miranda* warnings. Agents also testified during the motion to suppress hearing that Campbell was issued his *Miranda* warnings a second time at the police station once he was transported there.

{¶ 38} To rebut the state's evidence that Campbell was issued valid *Miranda* warnings, he argues that the record does not contain a recording demonstrating that he signed a waiver of his rights. The record indicates that some of the recording equipment used by the BURN agents and the Butler County Sheriff's office malfunctioned during Campbell's interview. However, the fact that the recording

equipment malfunctioned does not rebut the evidence offered by the state that Campbell was read his *Miranda* rights on two different occasions; once at the scene of the investigatory stop and once when Campbell arrived at the police station for questioning. Nothing in the record indicates that Campbell refused to speak with agents or officers, or that he requested counsel at any time, whether or not the entire interview was recorded.

{¶ 39} Moreover, no Ohio law requires that *Miranda* waivers must be signed or recorded in order to be valid. Instead, this court has recognized that the failure to have a defendant sign a *Miranda* waiver form does not render that waiver invalid. *State v. Hernandez–Martinez,* 12th Dist. Butler No. CA2011–04–068, 2012–Ohio–3754.

{¶ 40} Nor does the record indicate that there was any indicia of an involuntary waiver of rights. No evidence exists on the record that Campbell's age, mentality, or any prior criminal experience impacted his decision to speak with officers. Nor is there any indication that the length, intensity, and frequency of the interrogation resulted in Campbell's decision to answer questions. Nor is there any evidence or suggestion that there was physical deprivation, mistreatment, threat or inducement on the state's part before Campbell spoke with agents on the night of his arrest. Instead, the undisputed evidence was that two agents advised Campbell of his rights, and that Campbell waived those rights knowingly, intelligently, and voluntarily.

{¶ 41} After reviewing the record and considering each of Campbell's arguments, we find that Campbell's Fifth Amendment rights against self-incrimination were not violated. As such, Campbell's final assignment of error is overruled.

*State v. Campbell*, *supra.*

Campbell contends that this decision of the Twelfth District is based on an unreasonable determination of the facts on the basis of the evidence of record and also is an objectively unreasonable application of clearly established Supreme Court precedent, to wit, *Miranda v. Arizona*, 384 U.S. 436 (1966)(Traverse, ECF No. 12, PageID 422).

The record reflects that an evidentiary hearing was held on Campbell's motion to

suppress on January 2, 2014 (Tr., ECF No. 7-1, PageID 244, et seq.). The State presented eight witnesses and the defense presented none. *Id.* at PageID 245.

Erik Betz testified he was in the Road Patrol Division of the Butler County Sheriff's Department. *Id.* at PageID 282. He was instructed by agents of the narcotics ("BURN") unit of that Department to pull over Mr. Campbell's rental vehicle on the day he was stopped. *Id.* at PageID 284. Deputy Betz had no conversation with Campbell. *Id.* at PageID 287.

Michael Baker testified he was also a Deputy Sheriff in Butler County and part of the canine unit. Campbell and his wife, who was driving the car, told different stories about where they had been. *Id.* at PageID 291. After the drug dog alerted, the heroin was found "within seconds" and Campbell was arrested. *Id.* at PageID 293. Virtually the whole BURN unit was there and Baker testified he observed Sergeant Herring Mirandize Mr. Campbell. *Id.* at PageID 294. Campbell stated nothing in response in Baker's presence. *Id.* at PageID 295.[1]

Timothy Andrews, also an agent with the BURN unit, was one of the lead investigators on this case. *Id.* at PageID 300. On August 19, 2013, Andrews testified he interviewed Campbell at the Butler County Jail and advised him of his *Miranda* rights, which Campbell waived. *Id.* at PageID 328. Andrews understood that someone else had interviewed Campbell on August 16 after his arrest. *Id.* at PageID 329. Although there was no *Miranda* card, Andrews testified that the statements of Agent Herring, Detective Owens, and Sergeant Hackney showed Campbell was Mirandized at the Jail on August 16. *Id.* at PageID 331. Andrews admitted that there was no mention of *Miranda* in his incident report of what happened at the scene because he did not witness it. *Id.* at PageID 334.

Defense counsel admitted he was not attempting to suppress any statement Campbell

---

[1] Baker was cross-examined about a statement in a document he did not prepare that said Agent Herring witnessed the *Miranda* warnings. The author of the document, Agent Andrews, testified the report was about the second *Miranda* warning after arrival at the Sheriff's Office. *Id*. at PageID 300.

made on the 19th of August. *Id.* at PageID 336.

Mike Hackney testified he was a sergeant with the Butler County Sheriff. *Id.* at PageID 343. He testified he Mirandized Campbell at the side of the road during the initial stop. *Id.* at PageID 348. Campbell acknowledged understanding *Miranda* and did not ask to talk to a lawyer. *Id.* Deputy Baker witnessed the reading of the *Miranda* card. *Id.* at PageID 350. Campbell was not questioned at that point, but was told there would be further discussions at the Jail. *Id.*

In argument the prosecutor summarized the testimony about Miranda warnings. *Id.* at PageID 356-57. Most of the defense argument was about whether there was reasonable articulable suspicion for the stop. All that was said about Miranda was "The other testimony that – regarding relative to Miranda and it goes to the weight of what you heard, Judge. And again, we have and we can argue and submit what we get out of discovery and we're at a disadvantage sometimes with who and what we call as witnesses." *Id.* at PageID 360. Having listened to the testimony, the judge found there was "no debate" about the *Miranda* issues and "there's no evidence that he did not knowingly, intelligently, and voluntarily give up his rights." *Id.* at PageID 363. Based on his oral findings, Judge Sage entered an Order denying the Motion to Suppress (SCR, ECF No. 7, PageID 33). In the Motion to Suppress, defense counsel did not state the content of any statement Campbell may have made on August 16, but merely alleged the *Miranda* warnings had never been read. *Id*. at 31.

There was ample oral testimony from persons who were present on both occasions that Campbell was read his *Miranda* rights twice, one at the scene of the traffic stop and once later at the Butler County Jail. There does not exist the tangible evidence of a signed waiver or a video record of either warning, but Judge Sage was able to observe the demeanor of the witnesses and

9

entitled credit to their testimony. His conclusion that the warnings were given is not an unreasonable determination of the facts on the basis of the evidence presented to him, which included no evidence from the defense at all. That is to say, Campbell now claims that the *Miranda* warnings were not given a second time at the Jail, but there is no sworn testimony to that effect. The Twelfth District would have reviewed Judge Sage's findings of fact under a clearly erroneous standard and this Court reviews them under the same standard, with AEDPA deference.

Therefore Ground One is without merit and should be dismissed with prejudice.

**Grounds Two, Three, and Four: Asserted Violations of the Fourth Amendment**

In his Second, Third, and Fourth Grounds for Relief, Campbell alleges the Butler County officers obtained evidence from him in violation of his Fourth Amendment rights by tracking him to and from Boston, Massachusetts, through use of GPS technology by pinging his wife's cell phone.

The Warden asserts habeas corpus review of these claims is barred by *Stone v. Powell*, 428 U.S. 465 (1976)(Return, ECF No. 8, PageID 394-400).

Federal habeas corpus relief is not available to state prisoners who allege they were convicted on illegally seized evidence if they were given a full and fair opportunity to litigate that question in the state courts. *Stone v. Powell*, 428 U.S. 465 (1976). *Stone* requires the district court to determine whether state procedure in the abstract provides full and fair opportunity to litigate, and Ohio procedure does. The district court must also decide if a Petitioner's presentation of claim was frustrated because of a failure of the state mechanism. Habeas relief is

allowed if an unanticipated and unforeseeable application of a procedural rule prevents state

court consideration of merits. *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982). The *Riley* court, in

discussing the concept of a "full and fair opportunity," held:

> The mechanism provided by the State of Ohio for resolution of
> Fourth Amendment claims is, in the abstract, clearly adequate.
> Ohio R. Crim. P. 12 provides an adequate opportunity to raise
> Fourth Amendment claims in the context of a pretrial motion to
> suppress, as is evident in the petitioner's use of that procedure.
> Further, a criminal defendant, who has unsuccessfully sought to
> suppress evidence, may take a direct appeal of that order, as of
> right, by filing a notice of appeal. See Ohio R. App. P. 3(A) and
> Ohio R. App. P. 5(A). These rules provide an adequate procedural
> mechanism for the litigation of Fourth Amendment claims because
> the state affords a litigant an opportunity to raise his claims in a
> fact-finding hearing and on direct appeal of an unfavorable
> decision.

*Id*. at 526.

In *Good v. Berghuis*, 729 F.3d 636 (6th Cir. 2013), the Sixth Circuit held an evidentiary

hearing was not required by due process and followed its prior conclusion that "opportunity

means opportunity . . . the state court need do no more than 'take cognizance of the constitutional

claim and render a decision in light thereof." *Id*. at 638, *quoting Moore v. Cowan*, 560 F.2d

1298, 1302 (6th Cir. 1977).

> Consistent with *Moore* and with two of the three votes in *Bradley*,
> we make clear that the *Powell* "opportunity for full and fair
> consideration" means an available avenue for the prisoner to
> present his claim to the state courts, not an inquiry into the
> adequacy of the procedure actually used to resolve that particular
> claim.

*Id.* at 639-40.

Campbell used the procedures Ohio law makes available for raising Fourth Amendment

claims by filing and litigating a motion to suppress, then pleading no contest and appealing the

trial court's ruling on that motion.

Campbell raised his Fourth Amendment claims as his First and Second Assignments of

Error on direct appeal and the Twelfth District decided them as follows:

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN OVERRULING
APPELLANT'S MOTION TO SUPPRESS EVIDENCE
BECAUSE THE GPS PINGING INFORMATION USED TO
LOCATE THE APPELLANT WAS AN ILLEGAL SEARCH,
THEREBY VIOLATING APPELLANT'S RIGHT TO A FAIR
TRIAL, RIGHT TO DUE PROCESS OF LAW, AND RIGHT TO
BE FREE FROM UNREASONABLE SEARCHES AND
SEIZURES, AS GUARANTEED BY THE FOURTH, SIXTH,
AND FOURTEENTH AMENDMENTS TO THE UNITED
STATES CONSTITUTION, AND COMPARABLE
PROVISIONS TO THE OHIO CONSTITUTION, AS WELL AS
THE OHIO RULES OF CRIMINAL PROCEDURE AND OHIO
REVISED CODE.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED IN OVERRULING
APPELLANT'S MOTION TO SUPPRESS EVIDENCE BY
UPHOLDING THE WARRANTLESS SEARCH AND SEIZURE
OF APPELLANT'S VEHICLE, DESPITE THE LACK OF ANY
TRAFFIC VIOLATION OR THE PRESENCE OF ANY OTHER
REASONABLE SUSPICION, AND THEREBY VIOLATED
APPELLANT'S RIGHT TO A FAIR TRIAL, RIGHT TO DUE
PROCESS OF LAW, AND RIGHT TO BE FREE FROM
UNREASONABLE SEARCHES AND SEIZURES, AS
GUARANTEED BY THE FOURTH, SIXTH, AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION, AND COMPARABLE PROVISIONS OF THE
OHIO CONSTITUTION.

{¶ 12} Campbell argues in his first two assignments of error that
the trial court erred in denying his motion to suppress the evidence
seized as a result of the vehicle search.

{¶ 13} Appellate review of a ruling on a motion to suppress
presents a mixed question of law and fact. *State v. Cochran,* 12th
Dist. Preble No. CA2006–10–023, 2007–Ohio–3353. Acting as the
trier of fact, the trial court is in the best position to resolve factual

questions and evaluate witness credibility. *Id.* Therefore, when reviewing the denial of a motion to suppress, a reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Oatis,* 12th Dist. Butler No. CA2005–03–074, 2005–Ohio–6038. "An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard." *Cochran* at ¶ 12.

{¶ 14} Campbell asserts that his motion to suppress should have been granted because the police unlawfully used a GPS to locate him by pinging his wife's cell phone, and because the vehicle search was not the result of a traffic violation. [1] We disagree with both of Campbell's arguments.

{¶ 15} Regarding the GPS ping, Campbell argues that agents did not have probable cause to support the warrant issued that allowed them to ping the phone to indicate the location of Campbell or his family. However, the record is clear that the phone did not belong to Campbell so that he lacks standing to challenge the validity of the warrant.

{¶ 16} Fourth Amendment privacy rights are "personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois,* 439 U.S. 128, 133, 99 S.Ct. 421 (1978). As such, a person who alleges error by the use of evidence taken from someone else's property cannot claim that his own rights have been violated. *State v. Coleman,* 45 Ohio St.3d 298, 306 (1989). Only those whose personal rights have been violated can raise Fourth Amendment claims. *Id.* Thus, in order to challenge a search or seizure on Fourth Amendment grounds, a defendant must possess a legitimate expectation of privacy in the area searched, and the burden is upon the defendant to prove facts sufficient to establish such expectation. *State v. Renner,* 12th Dist. Clinton No. CA2002–08–033, 2003–Ohio–6550, citing *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547 (1980).

{¶ 17} The record is clear that the BURN agents obtained a search warrant for a cell phone belonging to Campbell's wife so that Campbell did not have reasonable expectation of privacy in his wife's phone. The fact that agents pinged the phone belonging to Campbell's wife did not implicate Campbell's personal rights in any way and he cannot raise a challenge to the warrant related to his wife's phone. *See State v. Crawford,* 8th Dist. Cuyahoga No. 98605, 2013–Ohio–1659, ¶ 45 (finding that appellant did not have

standing to challenge a search involving his codefendants where he "could not challenge the cell phone records of anyone but his own").

{¶ 18} Even if we were to entertain Campbell's argument that his rights were somehow implicated even though the phone belonged to his wife, we would still overrule his argument regarding the cell phone pinging for two reasons. First, Campbell had no reasonable expectation of privacy in the pinging of the phone voluntarily used while traveling on public thoroughfares. *See State v. Taylor,* 2d Dist. Montgomery No. 25764, 2014–Ohio–2550 (affirming trial court's denial of appellant's motion to suppress where appellant had no reasonable expectation of privacy in the pings emitted by the cell phone in appellant's possession); and *United States v. Skinner,* 690 F.3d 772, 777 (6th Cir.2012) (holding that appellant did not have a reasonable expectation of privacy in the data given off by his voluntarily procured cell phone).

{¶ 19} The other reason this court would affirm the denial of Campbell's motion to suppress is because agents had procured a valid search warrant supported by probable cause. The record indicates that agents requested the search warrant to follow the pinging of the cell phone belonging to Campbell's wife, and that such warrant was valid. As we will discuss next in regard to the stop, agents had ample probable cause to investigate, including pinging the cell phone to show its location in or about the Massachusetts area.

{¶ 20} According to Crim.R. 41(C),
> (1) A warrant shall issue on either an affidavit or affidavits sworn to before a judge of a court of record or an affidavit or affidavits communicated to the judge * * *. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. * * *

> (2) If the judge is satisfied that probable cause for the search exists, the judge shall issue a warrant identifying the property and naming or describing the person or place to be searched.

{¶ 21} When determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "the task of the

issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him * * * there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. George,* 45 Ohio St.3d 325 (1989), paragraph one of the syllabus.

{¶ 22} An appellate court should not substitute its judgment for that of the issuing court as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. *State v. Akers,* 12th Dist. Butler No. CA2007–07–163, 2008–Ohio–4164. "In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant." *George,* paragraph two of the syllabus.

{¶ 23} The record is clear that agents offered an affidavit that detailed the information given by their confidential informants and cooperating codefendants, including that Campbell would go to the Massachusetts area to bring heroin back to Ohio, and that Campbell would make such trips with his wife and children. The agents also provided information regarding the cars that Campbell had rented in the past, and that the cars were driven a distance equal to the mileage required to go from Ohio to Massachusetts and back. The information contained in the affidavit supporting the search warrant request supplied the probable cause necessary to issue the warrant. As such, and for several reasons, the trial court did not err in denying Campbell's motion to suppress evidence resulting from the pinging of his wife's cell phone.

{¶ 24} Regarding the investigatory stop, Campbell argues that officers lacked authority to initiate the stop because the deputy who performed the stop did not have personal knowledge as to the investigation and was merely acting on orders when he initiated the stop. We disagree.

{¶ 25} Ohio recognizes two types of lawful stops, a noninvestigatory stop in which the officer believes a traffic violation has occurred, and an investigatory stop. *State v. Cochran,* 12th Dist. Preble No. CA2006–10–023, 2007–Ohio–3353, ¶ 13. The record is undisputed that the agents or other officers did not witness Campbell commit a traffic violation. Instead, the stop was executed solely on information shared by BURN agents, as that information was derived from the investigation, that Campbell possessed heroin in his car.

{¶ 26} Before an investigatory stop may occur, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868 (1968). "The United States Supreme Court has interpreted the Fourth Amendment to permit police stops of motorists in order to investigate a reasonable suspicion of criminal activity." *City of Maumee v. Weisner,* 87 Ohio St.3d 295, 299 (1999), citing *Terry* at 22.

{¶ 27} Instead of employing an inflexible standard to determine whether an officer has a reasonable suspicion of criminal activity, its determination involves a consideration of "the totality of the circumstances." *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690 (1981). Accordingly, "both the content of information possessed by police and its degree of reliability" are pertinent when determining whether there is a reasonable suspicion of criminal activity to justify a stop. *Alabama v. White,* 496 U.S. 325, 330, 110 S.Ct. 2412 (1990).

{¶ 28} The record demonstrates that officers had a reasonable suspicion of criminal activity to justify the stop. Again, the BURN agents received information from reliable informants and codefendants that Campbell was trafficking in heroin. BURN agents interviewed at least seven different informants and cooperating codefendants, all of whom stated that Campbell was responsible for the heroin that was causing several overdoses in the area. Informants provided BURN agents with Campbell's name and address, as well as information that Campbell would rent a car, take his family with him, and travel to the Massachusetts area before returning to Butler County with the heroin.

{¶ 29} BURN agents confirmed several pieces of information as given to them by the informants, including that Campbell rented cars and that a cell phone belonging to his wife was located in the Massachusetts area when Campbell was believed to be on a heroin buying trip. Agents performed surveillance on Campbell to verify information from the informants, including that Campbell was set to go on a large buying trip to the Boston area. Agents learned that there was a rental car at Campbell's residence, and later traced the cell phone pings from Massachusetts back to Ohio.

{¶ 30} While Deputy Erik Betz, the officer who stopped Campbell, did not perform every step of the investigation first hand, we find that he was justified in making the stop. The record indicates that

Deputy Betz was involved at the beginning of the investigation by confirming that there was a rental car at Campbell's residence. Deputy Betz testified at the motion to suppress hearing that during the initial phases of the investigation, he passed Campbell's residence, saw a rental car in the drive, and confirmed that it was a rental car by running the license plates. Deputy Betz testified that he shared that information with BURN agents, and that the investigation continued. Deputy Betz became involved again in the investigation when he was on road patrol and was contacted by BURN agents regarding Campbell's travels. BURN agents directed Deputy Betz to pull over Campbell's car, and Deputy Betz initiated the investigatory stop at the behest of the BURN agents.

{¶ 31} While Campbell argues that Deputy Betz lacked any suspicion that Campbell was involved in drug activity, the record indicates otherwise. Deputy Betz was clearly involved in the beginning of the investigation, and was aware of the circumstances surrounding the BURN investigation into Campbell's activities. Deputy Betz indicated during the motion to suppress hearing that he was in contact with BURN agents, and had spoken to them to relate information regarding the rented car at Campbell's residence and again on the day of the investigatory stop. As such, Deputy Betz had the requisite specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the stop. This is especially true where Deputy Betz was directed by the BURN agents, who had been in charge of the investigation, to initiate the stop. There is no doubt from the record that the stop was a result of multiple officers and their knowledge of specific and articulable facts which, taken together with rational inferences from those facts, reasonably warranted the stop.

{¶ 32} After reviewing the record and considering each of Campbell's arguments, we find that the trial court properly denied Campbell's motion to suppress the evidence seized as a result of the stop. As such, Campbell's first and second assignments of error are overruled.

*State v. Campbell*, *supra.*

Campbell argues his opportunity to fully and fairly litigate his Fourth Amendment claims was interfered with by the reliance of the state courts on his supposed lack of standing to contest a search of his wife's cell phone. He argues the Supreme Court has held "standing" is no part of

Fourth Amendment analysis, citing *Rakas v. Illinois*, 439 U.S. 128 (1978). But in *Rakas* the Supreme Court held that passengers in a car that was searched who asserted no property or possessory interest in the car or in what was seized from the car could not challenge a search of the glove box or the area under the seat because they had no reasonable expectation of privacy in those areas. It was that holding of *Rakas* on which the Twelfth District relied here. What is more, it did so correctly because Campbell could not and did not assert any reasonable expectation of privacy in the location of his wife's cell phone. Simply put, Campbell had no Fourth Amendment rights as respects his wife's phone.

Campbell asserts the officers had no probable cause to ping the phone because his wife was not suspected of any illegal activity. But the police knew from more than one confidential informant that Campbell's trips to the East Coast to obtain drugs were customarily made in his wife's company. Whether or not his wife was complicit in his drug trafficking is not relevant.

Finally, Campbell argues the warrant was unlawful because it authorized a search outside the jurisdiction of the issuing court. On the contrary, the warrant did not authorize officers to search outside the territorial jurisdiction of Ohio; they could not have gone to Boston and searched the content of Campbell's spouse's phone and they did not attempt to do so. Instead, they maintained continual information on the location of the phone and therefore the probable location of Campbell and the heroin, by using GPS to track the phone without every leaving Ohio.

Campbell argues the state court judge was not authorized to issue the warrant in question because the amendment to Ohio R. Crim. P. 41 which explicitly authorizes this sort of warrant – the version of that Rule relied on by the Twelfth District – did not become effective until a number of months after he pleaded no contest. Upon examination, the tracking warrant portion

of the Rule is not the portion relied on by the Twelfth District. In any event, the Rules of Criminal Procedure are adopted to standardized procedures used in criminal cases in Ohio. They are not the sole source of a judge's authority to issue search warrants.

The foregoing analysis establishes that the Twelfth District's decision is not an objectively unreasonable application of Supreme Court precedent. But the Court should not even reach that question because Campbell had a full and fair opportunity to litigate his Fourth Amendment claims.


**Conclusion**


Based on the foregoing analysis, it is respectfully recommended that the Petition herein be DISMISSED WITH PREJUDICE. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.


July 10, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).